May it please the Court, Philip Smith and my partner, Nicole Nelson, on behalf of the petitioner, Ms. Sunali Weerasekara. Your Honor, I'd like to reserve one minute, if I can, for rebuttal. That's fine. Your Honor, when Congress created the one-year filing deadline for asylum as a basis to dissuade non-meritorious asylum applications, at the same time Congress created two very important exceptions to the filing deadline, one for changed circumstances, one for extraordinary circumstances, with the express purpose to allow legitimate asylum seekers to not have the door to safety slammed shut on account of a procedural defect. And that really is precisely the issue here. Ms. Weerasekara is a political activist from a prominent political family in Sri Lanka. She faced death threats, stoning, beatings in her home country. She came to the United States. She did not file for asylum within the first year. She filed after approximately four years. And if I may, I'd like to just address three points. First, the jurisdictional question. Then on the merits of what constitutes an extraordinary circumstance and the legal framework that the agency is required to follow. And then also the trauma that she experienced in Sri Lanka rose to the level of withholding of removal. And before you do that, just tell me this in a sentence. If we were to agree with you on this point, what would our disposition look like? What's the relief you want us to grant you on that front? Well, we think the court should grant withholding of removal and remand to the agency. On the asylum claim. On the asylum, it needs to be remanded for the agency to apply the proper legal framework to evaluate it in the first instance. So you think that we need to remand it back to the agency for them to do another extraordinary circumstances analysis? Or do we just say, no, we've looked at this and we think your client met the standard? Well, it needs to be remanded, in our opinion. You can say that it's an extraordinary circumstance. It meets that test. But in terms of the framework, which the agency did not apply, that should be done by the agency in the first instance. Okay. So go through your analysis. And so in terms of just jurisdiction, there's this issue about the court. Clearly, the court has jurisdiction to review questions of law. And that has been applied by the court in Ramadan and subsequently to the agency. What was the error of the board? How did the board legally err? I'm sorry? How did the BIA legally err? Here, they did not make – well, the reason the court has jurisdiction to review it is there weren't factual findings made. There wasn't a factual dispute in this case. They erred by focusing on what happened after – well, not going through the framework, and focusing what happened four years later for the reason that she applied. And they looked at the fact that she was able to submit her asylum application prior to getting treatment and a diagnosis for her mental illness. And they said because she was able to do that in four years, she didn't show why she was not able to do it in the first year. And they didn't really make a finding about was this an extraordinary circumstance, was this directly related to the failure to file the asylum application. Let me ask just one thing on the facts. I thought she testified at her hearing that she was unaware of the availability of asylum. She did testify, Your Honor. That was her testimony. And that was – Did she say at all – it's been a long time since I've looked at this, but did she say – I can't recall. Did she say that her condition, the stress, the post-traumatic stress and all of that, just the trauma and all of that, that in any way that that – the result of that, she was not thinking clearly or she was not able to focus or something like that? She said that in her affidavit that was submitted to the immigration court. At the hearing itself, she didn't make that express statement. But she said it in her affidavit. And Dr. Koslowski said that in the mental health evaluation that was submitted and that was before the court. And so her answer that she didn't know isn't really a complete answer. And we might compare that to the second ground. For a young girl that comes to the United States when she's 10 years old, for example, and she's from an area of Africa where the rate of female genital mutilation is extraordinarily high. When she turns 18, if she applies for asylum and the immigration says, well, why didn't you apply sooner, and her answer is, I didn't know about asylum, that answer we wouldn't immediately – the court wouldn't say, well, ignorance is no excuse. They would look at, well, she was only 10 years old. And so that answer is only a partial answer. We have to look at the entire circumstance. Am I right in remembering that the psychologist – you said the person's name. I can't remember the name. But did that person say that even if your client had known about the one-year deadline, that she still wouldn't have been able to file because of the issue she was dealing with? Well, Dr. Koslowski said that the emotional numbing strategy that she was using, that it was simply too painful for her to relive these traumatic experiences. And that was likely what would have interfered with her ability to do an asylum application, because an asylum application expressly requires the individual to relive this experience, to say with great particularity what happened, who did it, how did it impact you, why did it occur. And so Dr. Koslowski said that's exactly what someone that is suffering with serious post-traumatic stress disorder is unable to do. And so that was her finding. In terms of the legal framework, the regulation sets examples. It doesn't specifically define what is an extraordinary circumstance. It's clearly a legal term of art within the context of this asylum statute. The first example is a mental or physical disability, including the effects of persecution or violent harm. I mean, that's not the issue. It's the directly related part that's the issue. And so tell me what does that mean? I couldn't find a real nice, clear definition in our case law. So what is it that you want us to say directly related means? It is a circumstance that impacts the individual's ability or explains the reason the individual was not able to file their asylum application within the one-year deadline. And here the directly related connection is most expressly provided by the doctor's mental health evaluation, which is in the administrative record. We have some case law that seems to say that it means prevents. Well, that word was used. And it's been ‑‑ As the word is used in our case law, does that mean anything different than directly related? It describes it. But it doesn't ‑‑ I mean, it's not found in the statute or the regulations. And in the regulations, there is a discussion when they were published that originally it was going to be a but for type of exception. And they expressly took out that requirement that you have to show but for this circumstance you would have filed, which sounds like prevent. And that was expressly taken out by the agency to have this directly related so that it could be viewed more broadly, so that a legitimate asylum seeker wouldn't be ‑‑ So your argument is that under the regulation, the directly related, the board didn't apply that standard when looking at the ‑‑ That's correct. The affidavit of the doctor. That's correct. Is that right? That's correct. The board made no mention of the proper standard. And they used multiple times this word prevented. And to full account, the doctor's opinion that she had suffering from the traumatic stress when she came to the United States. Correct. That's exactly right. There was no discussion of that. Okay. Your Honor, maybe I'll just say what time I have. Yes, thank you. Morning. You're definitely going to have to move the ‑‑ yeah, you pushed it way out of the way. It's got to be right in front of you. Okay. And you need to keep your voice up for Judge Pergerson. Yes. May it please the Court, Rebecca Nahas for the United States Attorney General. There are disputed facts here, so the Court lacks jurisdiction to consider Petitioner's asylum claim. The factual dispute is why did Petitioner fail to timely file for asylum? Was it because of ignorance of the law as she herself testified in immigration court, or was it because of her mental illness as a psychologist stated in an affidavit that was not supported by testimony? Well, I mean, I can see how you would view it that way, but it's not really a typical factual dispute. You're just ‑‑ you just basically are pointing to evidence that the Petitioner herself put forward. And sure, she said, I didn't know about the deadline. Okay. But she then had the psychologist say that even if she had known about the deadline, she still wouldn't have been able to do it. Neither of those facts is in dispute. So, I mean, that to me would be, you know, if there were some dispute, you would put in your own psychological expert who said, I evaluated this person, and in fact, they could very well have filed. That would be a factual dispute. But the two things that you've just mentioned, no one's disputing those. Well, I would take issue with the fact that the psychological evaluation did not state that had Petitioner known about this one‑year bar, she still wouldn't have been able to file. The psychologist simply stated that it was likely that PTSD caused emotional numbing that made it difficult for her to file for asylum. That is not consistent with her testimony that the reason she didn't file was because she didn't know about asylum law. She was represented by counsel. She had an opportunity to explain to the immigration judge why she didn't file. She could have said, it was difficult for me to relive this trauma. She never said that in immigration court. And so we have these two conflicting pieces of evidence, and it takes a fact finder to weigh them and decide which piece of evidence they're going to give more credit to. And that's why the court would not have jurisdiction here. This case is indistinguishable from Gasparian and Sumolong, where the court found that had it taken jurisdiction, it would have required them to engage in fact finding. The same inquiry was at issue in both of those cases. Why did the alien fail to file within a year? And in both of those cases, the agency found it wasn't the mental illness. It was some other reason. So for the same reason that the court found no jurisdiction in Gasparian and Sumolong, it should likewise find no jurisdiction here. However, if it does decide, if the court does take jurisdiction over this issue, the agency's decision regarding extraordinary circumstances was proper for three reasons. Like I stated earlier, Petitioner herself testified that the reason was ignorance of the law. Second, she was able to file. I mean, did she really say that? She said the reason I didn't file is because I was ignorant of the deadline? Or did she just admit that, you know what, yeah, I didn't know that there was, I mean, she eventually was told by a lawyer earlier in the process that, oh, you've already missed the deadline, right? That's right. Of course she didn't use the word ignorance of the law. That's sort of a legal term. No, no, but it was the reason you framed it as she admitted that the reason she didn't, as though in causal terms. And I don't remember her admitting, making that admission. I just remember her making the admission that, yeah, I wasn't aware of that deadline. That doesn't mean that's the reason in the way that the directly related language is. If I can have a second to find her testimony. She was asked, why haven't you applied for asylum within the one year? And she responded, I never knew about asylum at that point. I didn't know the country had something like that. That's her testimony. Those are her words. And, Your Honor, you're correct that she did testify at some point that within about 16 months of her arrival, she did talk to an attorney who told her she wasn't eligible for asylum. And that just goes to support the agency's finding that it wasn't mental illness. It was. But, okay, yeah. So someone says, okay, I didn't know about the deadline, but my psychologist says that in all likelihood, I can't remember the exact language, I thought it was very likely is what the psychologist said, that this person, given her condition or given the trauma that she's been through, she would not have been able to do what's required to file for asylum, even if she had known about that deadline. Well, Your Honor, Petitioner, again, was provided an opportunity to say that in her own words. And I think it's important to note that the psychologist was not produced as a witness in immigration court. The evaluation was produced three months after the end of the hearing. And so when faced with the testimony of the person themselves versus a psychologist who wasn't presented for cross-examination, the agency was within its right to not credit the psychological evaluation over the Petitioner's own testimony. I'd also like to point out that she was able to file other applications for relief. She filed a visa extension. Yeah, but they didn't require her to relive the trauma, did they? No, that's right. And it seems to me that's why the agency's reference to those is just a non sequitur. So what? I mean, it's not like you have to be, you know, completely incapacitated to meet the, right? So, I mean, that's just not a very persuasive point. I understand your point about her admission, and perhaps the agency could have credited that, but I don't think the fact that she was able to do other things in her life means that it has any relevance to whether she could have filed for asylum. Certainly, but I think it's related to the point that she went to a psychologist, excuse me, a lawyer, and told the lawyer within about a year, 16 months of her arrival, I'm really scared of going back home. What can I do to stay in this country? So it's not just that she filed applications, but she was thinking about her immigration status, which goes to show that her mental state was such that she was able to file within a year, that it was unfortunately just ignorance of the law that caused the delay. Your time is running out, but could you, for me, we do have jurisdiction over the withholding claim. That's right, Your Honor. And as I understand what the BIA and the I.J. did is they determined that she did not suffer past persecution. Is that correct? That's right. When I read the record and the I.J.'s decision and the BIA's ruling, you know, it looks like she had a pretty good asylum claim. So explain to me what I'm, why I'm not looking at the record the same way. Well, to begin, past persecution is not the only step. There's also a clear, for withholding you have to show a clear probability, which is what you want. But she needs the, it would be very helpful to her if she could have, if she were able to obtain the presumption. Right. Yes. So the agency's past persecution finding is supported by substantial evidence. The threats she received were not sufficiently credible under this Court's precedent. This Court has held that threats alone can constitute past persecution, but they have to be accompanied by physical confrontation by the person making the threats in order for the threats to be credible. Here we have some vague threats. She said she was repeatedly threatened over the span of about 10 years, yet no one took action on those threats. And, you know, this, that's consistent with this Court's precedent. Moreover, the, the beatings that she suffered, we don't really know what. So someone would have to actually have suffered some physical injury following a threat in order for it to be a credible threat. Not necessarily. Is that your point? Not physical injury, but confrontation. That's what this Court has held. In Ruano and Navas, in both of those cases, there was past persecution based on threats, but the net. So a letter or a posting of a sign or something on a door that, you know, you're not going to be here tomorrow is, just doesn't rise to a credible threat? Not under this Court's precedent. It needs to be. My understanding of our case a little bit. Well, for example, in Navas, the petitioner was threatened with death. His mother was beaten, and he was himself chased and shot at. And the Court found that that compelled a finding of past persecution. We don't have any of that here. All we have are some vague threats. And it doesn't need physical injury, but you do need a confrontation for it to be credible. She was there for 10 years, and no one took any action on those threats. And I think it's important to remind the Court of the standard review. It needs to, the record needs to compel the contrary conclusion. And really the finding with regard to threats is consistent with this Court's precedent. Moreover, the beatings were part of a sort of crowd control, according to petitioner's own testimony.  Right. Right.     And really the finding with regard to threats is consistent with this Court's precedent. She was beaten by the police, and she was one of the people that was struck. But we don't really know how bad it was or how many, how long it lasted. So for that reason, the past persecution finding is supported as well by substantial evidence. Thank you, Your Honor. Anybody else? I believe you had a minute for rebuttal. Thank you, Your Honor. Just briefly, on the past persecution, it's not exactly accurate to say these were just unfulfilled threats and there was no follow-up. The death threats, which were very specific and happened one year, they're dated one year before she left the country. She was beaten at these political rallies. She was inside her home that was stoned by government agents. She had sold her home, and she was in hiding within Sri Lanka, staying at friends. And she suffered psychological injuries that, again, we have from the doctor's evaluation. The Court has held in cup that psychological injuries are also the type of injuries coupled with threats that can constitute past persecution. In that case, it was a pastor from Burma who was himself not directly harmed, but his co-pastor had been tortured and killed. And the psychological impact the Court had determined rose to the level of past persecution. She was found credible, forthright witness before the by the immigration court. And, again, really the question is, is the door to safety going to be shut on a legitimate asylum seeker because of a technical defect in her filing? Thank you, Your Honor. Thank you, counsel. We appreciate the arguments on this case. Very interesting. And have a safe trip back to D.C.
judges: Pregerson, Paez, Watford